UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. MAHENDRA AMIN, M.D.,

Plaintiff,

v.

SPIEGEL & GRAU LLC,

Defendant.

No. 1:25-cv-10582 (MMG)
ORAL ARGUMENT REQUESTED

# REPLY MEMORANDUM OF LAW IN SUPPORT
# OF MOTION TO DISMISS COMPLAINT

MILLER KORZENIK RAYMAN LLP
Mona Houck
David S. Korzenik
1501 Broadway, Suite 2015
New York, N.Y. 10036
(212) 752-9200
dkorzenik@mkslex.com
mhouck@mkslex.com

*Counsel for Defendant*
*Spiegel & Grau LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .......................................................................................................................2

    I.      New York Law Applies to This Case ................................................................. 2

    II.    The Fair Report Privilege Applies to the Challenged Statements ...................... 5

    III.   Plaintiff Fails to Adequately Plead Actual Malice ............................................. 6

    IV.   The Challenged Statements Are Not Actionable for Multiple Reasons ............... 8

CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Amin v. NBCUniversal Media, LLC,*
  2024 WL 3188768 (S.D. Ga. June 26, 2024) ........................................9, 11

*Biro v. Conde Nast,*
  963 F. Supp. 2d 255 (S.D.N.Y. 2013) ........................................................7

*Bose Corp. v. Consumers Union of U.S., Inc.,*
  466 U.S. 485 (1984) ...................................................................................6

*Cabello-Rondon v. Dow Jones & Co., Inc.,*
  2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017) ...........................................3

*Condit v. Dunne*
  317 F. Supp. 2d 344 (S.D.N.Y. 2004).......................................................4

*Davis v. Costa-Gavras,*
  580 F. Supp. 1082 (S.D.N.Y. 1984)...........................................................4

*Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. City of New York,*
  101 A.D.2d 175 (1st Dep't 1984) .............................................................9

*Humane League of Philadelphia, Inc. v. Berman & Co.,*
  108 A.D.3d 417 (1st Dep't 2013)..............................................................8

*Kinsey v. New York Times Co.,*
  991 F.3d 171 (2d Cir. 2021) .............................................................2, 5, 6

*Kinsey v. N.Y. Times Co.,*
  2020 WL 1435141 (S.D.N.Y. Mar. 23, 2020)........................................3, 4

*Machleder v. Diaz,*
  801 F.2d 46 (2d Cir. 1986) ........................................................................3

*Maryland Cas. Co. v. Cont'l Cas. Co,*
  332 F.3d 145 (2d Cir. 2003).......................................................................2

*Palin v. N.Y. Times Co.,*
  940 F.3d 804 (2d Cir. 2019) .......................................................................7

*Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.,*
  2007 WL 4820968 (S.D.N.Y. Sept. 18, 2007) ..........................................4

*Winter v. Holmes,*
  22 N.Y.3d 300 (2013)..................................................................................4

**Statutes**

N.Y. Civ. Rights Law § 74 ...........................................................*passim*

N.Y. Civ. Rights Law § 76-a ..............................................................2, 6

O.C.G.A. § 51-5-7 ................................................................................2, 6

Defendant Spiegel & Grau LLC submits this reply memorandum in further support of its Motion to Dismiss.

## PRELIMINARY STATEMENT

The Plaintiff here is a doctor who has been found by a United States Senate investigation to have provided woefully inadequate care to immigrants detained at an ICE facility. The investigation concluded that detainees were subjected to excessive, invasive, and unnecessary gynecological procedures and found repeated failures to obtain informed consent.

The Defendant, Spiegel & Grau, published a collection of essays, one of which focuses on the indisputable history of medical mistreatment of women. A few paragraphs in that essay reference the excessively flawed treatment of detainees under Plaintiff's care—women who had no choice regarding *who* treated them and, as the Senate investigation showed, often had no choice regarding *what* their treatment entailed. Though some references in those paragraphs are imperfect, perfection is not what the law requires. Once notified of Plaintiff's requested corrections, Defendant immediately sought remedies, removing references to Plaintiff in the audiobook and ebook, withdrawing every possible printed copy, and printing a revised version.

Plaintiff's Complaint and Response to the Motion to Dismiss disregard this reality, isolating statements while ignoring the context of the essay, the Senate's damning investigation, and Defendant's prompt response.

This effort should fail, and Plaintiff's Complaint should be dismissed because under New York law, which applies here, the challenged statements are not actionable because the fair report privilege applies, Plaintiff has failed to plausibly plead actual malice, and/or they are protected expressions of opinion.

**ARGUMENT**

**I.     New York Law Applies to This Case**

In a diversity case, the forum state's choice-of-law rules determine which substantive law applies. *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003). New York looks first for an actual conflict in the law of the relevant jurisdictions. *Id.* Here, New York Civil Rights Law § 74 provides an absolute privilege for fair reports of official proceedings while the Georgia statute, O.C.G.A. § 51-5-7, provides a qualified privilege. In addition, New York law requires pleading actual malice in claims—like this—based on "any communication in a place open to the public or a public forum in connection with an issue of public interest." N.Y. Civ. Rights Law § 76-a(1)(a).

Applying the New York choice-of-law framework to this case demonstrates that its substantive law should also apply, as it is "the state with the most significant interests in the litigation." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 174 (2d Cir. 2021). In defamation cases involving statements published nationally, the law of the state of the plaintiff's domicile does not apply when "with respect to the particular issue, some other state has a more significant relationship to the issue or the parties." *Id.* at 177 (quotations omitted) (noting, at fn. 21, that "New York's approach to multistate defamation cases reflects what is sometimes described as a more 'modern' approach to conflict of laws that emphasizes 'governmental interest analysis' and is reflected in the Restatement"). In determining which state has "a more significant relationship," courts "weigh all the factors that might impact on the interests of various states in the litigation," including the site of the greatest injury, the state from which the statements emanated, where the activities related to the challenged statements took place, and the states' policy interests. *Id.*

Those factors show that New York has a more significant relationship that compels application of its law. In *Kinsey,* although the plaintiff's domicile and the activities covered by the publication were elsewhere, the district court found that the other factors outweighed those and applied New York law. *Kinsey v. N.Y. Times Co.*, 2020 WL 1435141, at \*5 (S.D.N.Y. Mar. 23, 2020), *aff'd* 991 F.3d 171.

Those same other factors control this case. Just as in *Kinsey,* the challenged statements here "emanated from New York," where the only defendant is based, conducts its publishing activities, and makes its editorial decisions. *Id.,* citing *Machleder v. Diaz*, 801 F.2d 46, 52 (2d Cir. 1986) ("CBS accurately asserts that New York has a strong interest in this litigation, because WCBS–TV is located there, the subject broadcast emanated in Manhattan, and the day-to-day professional activities of CBS are conducted in New York."). Plaintiff's contention that the statements did not emanate from New York because "Defendant publishes books nationwide" is a misreading of the law. *See* Dkt. No. 35, Plaintiff's Response ("Pl. Resp.") at 8. The publisher's location determines "where the statements emanated from." *Kinsey,* 2020 WL 1435141, at \*5 (finding that the challenged statement "emanated from New York based on its publication in the New York Times," even though the story was "published in every state of the United States and all over the world"). *See also Cabello-Rondon v. Dow Jones & Co., Inc.*, 2017 WL 3531551, at \*3 (S.D.N.Y. Aug. 16, 2017) (statements published in *The Wall Street Journal* emanated from New York).

New York's policy interests are also greater than those of Georgia. As in *Kinsey*, while the state of Plaintiff's domicile has an interest in protecting its citizens from defamation, "New York has a strong interest in establishing defamation standards for media outlets domiciled in the state." 2020 WL 1435141, at \*5. *See also Test Masters*

*Educ. Servs., Inc. v. NYP Holdings, Inc.*, 2007 WL 4820968, at *5 (S.D.N.Y. Sept. 18, 2007) ("New York has a policy interest in regulating the conduct of the media, including the Post whose principal place of business is in New York."); *Condit v. Dunne*, 317 F. Supp. 2d 344, 353 (S.D.N.Y. 2004) (New York's "interest in regulating the conduct of its media ... remains even when the target of the statement lives in another state."). This is especially true when New York is also the forum state. *Kinsey*, 2020 WL 1435141, at *5 (citing *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1093 (S.D.N.Y. 1984) (finding that in a multistate libel case, "the state where defendants' significant acts and omissions gave rise to their liability is the most appropriate source of legal norms, particularly when it is also the forum state")).

New York's interest is particularly important when the application of a privilege is at issue. A privilege dictates whether a party could face liability for speech, making the speaker's location crucial to ensure that parties can predict the consequences of their actions. *See, e.g., Winter v. Holmes*, 22 N.Y.3d 300, 316 (2013) (declining to enforce a Colorado subpoena where "a New York reporter ... was aware of—and was entitled to rely on—the absolute protection embodied in our Shield Law when she made the promises of confidentiality that she now seeks to honor"). Similarly, Spiegel & Grau was entitled to rely on the absolute protection provided by New York's fair report statute in deciding to publish *Holy Ground* ("the Book"). *See also Davis*, 580 F. Supp. at 1092 ("New York, as the national center of the publishing industry, has a significant interest in assuring that the risks and liabilities flowing from publishing ... will be uniform.").

The decision to publish the Book was made in New York, by a New York publisher, relying on New York's legal standards. Plaintiff brought this case in New York. New York's interests outweigh those of Georgia, and New York law applies.

**II.    The Fair Report Privilege Applies to the Challenged Statements**

As established in Defendant's opening brief, New York's absolute fair report privilege applies to most of the challenged statements. *See* Dkt. No. 30, Defendant's Motion to Dismiss ("MTD"), at 4-18. Plaintiff's arguments that the statements "are not a 'report' of anything" or not fair reports both fail. Pl. Resp. at 9.

First, the Book clearly attributes multiple statements to official proceedings—all that is required for the privilege to apply. *See Kinsey*, 991 F.3d at 180 ("[O]ur case law does not require that the court filing, the court, or the jurisdiction be specifically identified in the article. The key question is whether the reader is able to determine that the report is *of a proceeding*." (emphasis in original)).

The Book makes clear it is drawing from multiple official proceedings:

- "… a nurse named Dawn Wooten, who worked at the Irwin County Detention Center in Ocilla, Georgia, filed **a whistleblower complaint**."
- "Upon hearing about the whistleblower's complaint, **House Speaker Nancy Pelosi** described the conditions at the detention center as 'a staggering abuse of human rights.'"
- "On October 2, 2020, the **House of Representatives** condemned the practice in **a congressional resolution**."
- A **congressional investigation** finally revealed that 'female detainees appear to have undergone excessive, invasive and often unnecessary gynecological procedures' …."

Cmpl. ¶¶ 105(a)(c) (emphasis added). Each reference gives the reader obvious notice that the Book is reporting on official proceedings, and that is sufficient to invoke the privilege. Plaintiff contends that the Book does not contain "a 'report' of anything" because only "a single statement mentions a congressional investigation, which Defendant states is the Senate report." Pl. Resp. at 10. Plaintiff even argues that the Book's attribution to the "congressional investigation" is insufficient because "'Senate' is not even mentioned at all." *Id.* at 11. While that quibble fails because "congressional

5

investigation" makes the reference to an official proceeding blatantly obvious, it is also defeated by Plaintiff's own Complaint, in which he stated that "Congressional investigation" was "apparently referencing the U.S. Senate Permanent Subcommittee on Investigations." Cmpl. ¶ 10. Thus, it's clear that a "reader is able to determine that the report is *of a proceeding*." *Kinsey*, 991 F.3d at 180.

Further, as addressed in the MTD, each of these proceedings falls within the broad scope of Section 74. *See* MTD at 5-6.

## III. Plaintiff Fails to Adequately Plead Actual Malice

The Complaint fails to plausibly allege facts that could "demonstrate with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement."[1] *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 n.30 (1984). Nor can Plaintiff's briefing remedy this pleading failure.

Plaintiff's primary contention in his Response is that Defendant knew of falsity because it relied on the Senate report, which it contends contradicted the challenged statements. Pl. Resp. at 21. As more fully addressed below, this argument fails because the Book reported *both* the initial allegations and the Senate report's conclusion.

Plaintiff otherwise argues that the Complaint sufficiently pleads actual malice by alleging that Defendant purposefully avoided the truth, failed to investigate, ignored the improbability of the accusations, failed to seek his comment, and financially benefited. *Id*. These are no more than the legal conclusions and actual malice buzzwords that

---

[1] This showing of actual malice as to each statement is required for any claim based on "any communication in a place open to the public or a public forum in connection with an issue of public interest." N.Y. Civ. Rights Law § 76-a(2). Even if Georgia law applied as Plaintiff contends, Plaintiff would be required to establish this to overcome the fair report privilege there or to obtain punitive damages.

courts regularly reject as insufficient pleading. *See* MTD at 18-23. These sweeping allegations fail to include the required specific facts that could establish that Spiegel & Grau itself subjectively knew of any falsehood.

Plaintiff's effort to discredit Defendant's immediate action upon notice of inaccuracies must also fail. Plaintiff cites *Palin* for the proposition that "a correction may indicate not an absence of actual malice but a decision 'that the false allegation was not worth defending.'" Pl. Resp. at 24, citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019). This ignores *Palin*'s unique circumstances. That court said that allegations that the editor's personal experience editing and approving past articles that disputed the accuracy of the editorial at issue, as well as allegations of specific personal biases against the plaintiff, *could* lead to a conclusion that the error was more than a research failure. *Palin* at 814-15. Those circumstances are not present or pleaded here. Nor does the case law require a correction to be "in as conspicuous and public a manner as the defamatory statements." Pl. Resp. at 24. However, fully *eliminating* references to Plaintiff by withdrawing distributed books, revising the audio and ebook versions (before release), and publishing a revised physical edition is surely as effective a remedy. Cmpl. ¶ 102. Further, Defendant posted a correction on its website. *Id.* ¶ 100. In the context of a hardcover book—as opposed to an online publication, for example—that is as "conspicuous and public" as practically possible. Defendant's prompt efforts, taken at great expense, "make[] it less likely that [the defendant] acted with actual malice." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 283 (S.D.N.Y. 2013).

**IV.    The Challenged Statements Are Not Actionable for Multiple Reasons**

The Complaint quotes five full paragraphs of the Book, with a blanket allegation that the "statements are false." Cmpl. ¶¶ 87-88. Plaintiff's Response finally identifies the specific statements he alleges are defamatory. Pl. Resp. at 5-6. We address each below.

**Statement 1: "the center's leading doctor."** *Id*. at 5. Plaintiff contends that he was not the leading doctor "but rather was an outside physician who had no control over the conditions at ICDC." *Id*. Even if false, the statement is not defamatory. Plaintiff appears to recast the Book's statement to claim that it alleges he had responsibility for other conditions at the ICE facility (also included in the whistleblower's complaint). But the Book makes no such assertion; it focuses only on allegations regarding Plaintiff. Cmpl. ¶ 87. In that context, the challenged language is not defamatory. In addition, there can be no actual malice as to this statement because Defendant is entitled to rely on the reporting of *The New York Times*, which noted that Plaintiff "has been described by ICE officials as the detention center's 'primary gynecologist.'" Dkt. No. 31-4 at 4. *See, e.g., Humane League of Phil., Inc. v. Berman & Co.,* 108 A.D.3d 417, 419 (1st Dep't 2013) ("[G]ood faith reliance on newspaper articles precludes a finding of actual malice.").

**Statement 2: "not even a gynecologist."** Pl. Resp. at 5. A later reference notes that Plaintiff is not "certified as a gynecologist." Cmpl. ¶ 87. It is not disputed that Plaintiff is not a board-certified gynecologist, and that was a repeated concern in the Senate report. This statement is protected by the fair report privilege, which allows for some inaccuracy. *See* MTD at 13-14.

**Statement 3: "a 'uterus collector' who 'told nearly every woman who went to see him that she had to have a hysterectomy.' "** Pl. Resp. at 5-6. Plaintiff

focuses overwhelmingly on this statement. This is not surprising, as statements related to this allegation are the only ones deemed false in his litigation against NBC. *See Amin v. NBCUniversal Media, LLC*, 2024 WL 3188768, at *20 (S.D. Ga. June 26, 2024). But that focus is misplaced here as this case differs in material ways. First, the NBC reports primarily addressed *only* the whistleblower's allegations of mass hysterectomies. *Id.* Those reports were broadcast two years before the Senate investigation was released. *Id.* at *4. Which leads to the second key difference: the fair report privilege could not apply there, to an investigation not yet contemplated. Here, the Book not only reports on the investigation but provides the full arc of the story. It describes the whistleblower's allegations, then the reaction of the media and public officials, and concludes with what the Senate investigation "finally revealed": that "female detainees appear to have undergone excessive, invasive, and often unnecessary gynecological procedures." Cmpl. ¶ 87. This statement is therefore protected by the fair report privilege, as it is drawn from the background to the Senate investigation and the Book includes the outcome of that investigation. *See* MTD at 9-10. To the extent the connection between the initial allegations and the ultimate conclusion is not precisely made, the privilege still applies as it allows for some error.[2] *See Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. City of New York*, 101 A.D.2d 175, 183 (1st Dep't 1984) ("[A]n article need not be a verbatim account or even a precisely accurate report of an official proceeding to be a 'fair and true report.'"). A comparison of the Book's account and the Senate investigation

---

[2] It is for this same reason that Plaintiff's effort to use the prompt retraction and other remedial measures against Spiegel & Grau must be rejected. The fair report privilege and the actual malice requirement provide protection for publishers who make mistakes. A publisher that nevertheless wishes to correct errors brought to its attention does not waive those protections for taking responsible steps. But that is Plaintiff's contention—one that if adopted by a court would import a powerful disincentive for any publisher to make any correction.

could produce a different effect on a reader only if one disregarded—as Plaintiff tries to do—every conclusion in the report except that Plaintiff was a gynecologist who performed two hysterectomies.[3]

The privilege also applies to other statements, including the Book's report of Rep. Nancy Pelosi's statement, the House Resolution, and the Senate investigation.[4] See MTD at 12-16. Although the Complaint includes these statements, Plaintiff does not identify any specific falsehood or defamatory language in them.

**Statement 4:** Plaintiff's final "[s]pecifically" identified "false and defamatory statement" is not a statement at all but rather a sweeping contention that "all procedures he performed were done with the knowledge and consent of patients." Pl. Resp. at 5-6. This is presumably an effort to argue that *something* in the second paragraph in ¶ 87 of the Complaint is defamatory. That argument must fail. That paragraph relies on the *Times* report, in which "reviewing doctors" and "all of the women" interviewed "raised concerns about whether Dr. Amin had adequately explained the procedures he performed." Cmpl. ¶ 87. Further, the Senate report found "repeated failures to secure informed consent." *See* MTD at 14-15. Thus, the Book's references to lack of informed consent are protected by the fair report privilege and further are not actionable because Defendant is entitled to rely on these reputable sources, defeating any allegation of actual malice. *Id.* at 22.

---

[3] Plaintiff makes the incredible claim that the takeaway from the Senate report is that "he was a gynecologist, was not a uterus collector, and only performed two hysterectomies." Pl. Resp. at 15. In fact, the report includes a lengthy list of examples in which Plaintiff disregarded women's bodily autonomy and subjected them to procedures that were "too aggressive and inappropriate" and "unethical" and employed practices that were "woefully behind the times"—among many other failings cited in the dozens of pages devoted to his actions. *See* MTD at 13-16; Dkt. No. 31-03.

[4] Plaintiff falsely states that the Book "did not report on any" of the Senate report's findings. Pl. Resp. at 15 The Book's contents refute this. Cmpl. ¶ 87. Defendant respectfully asks the Court to review the claims in the context of the entire chapter of the Book, provided at Dkt. No. 31-01.

Plaintiff makes the confused argument that Defendant cannot rely on the *Times* article because claims in the whistleblower's complaint—*not* the article—were later disproven. Pl. Resp. at 18. Yet Plaintiff points to no instance of error in the article. And no later finding conflicts with the *Times* account that many detainees were subjected to "invasive gynecological procedures that they did not fully understand and, in some cases, may not have been medically necessary." Dkt. No. 31-04 at 3. Indeed, the Senate report—published two years later—echoes the article, finding that detainees were subjected to "excessive, invasive, and often unnecessary gynecological procedures" along with "repeated failures of informed consent." Dkt. No. 31-03 at 3.

Plaintiff accuses Spiegel & Grau of cherry-picking information from the Senate report, Pl. Resp. at 15, while he mischaracterizes both the Book and the Senate investigation and disregards nearly all of the investigation's findings. The investigation could lead no reasonable reader to any conclusion other than that Plaintiff did indeed disregard the bodily autonomy of the women in his care at this ICE facility—the key point of the Book's references. The author's conclusion that these actions are just one of the essay's examples of behavior that evokes a "plantation mentality" is non-actionable opinion. Of this Plaintiff should be fully aware, as it is not the first such comparison that has been fairly drawn. The Georgia court rejected his effort to find defamatory a speaker's comparison of treatment at the ICE facility to "an experimental concentration camp" where "they're experimenting with our bodies." *See Amin*, 2024 WL 3188768 at *20 (finding the statement to be non-actionable opinion as a subjective assessment and "hyperbolic analogy rather than a statement of fact"). Whether an "experimental concentration camp" or a "plantation mentality," the same protection applies.

# CONCLUSION

Spiegel & Grau respectfully asks this Court to dismiss the Complaint with prejudice and grant any other relief the Court deems just and proper.

Dated:  March 20, 2026        Respectfully submitted,

MILLER KORZENIK RAYMAN LLP

/s/ Mona Houck

Mona Houck
David S. Korzenik
*Counsel for Defendant Spiegel & Grau LLC*

**CERTIFICATION OF WORD COUNT**

In compliance with Rule 7.1(c) of the Joint Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I certify that the word count in this Memorandum of Law (excluding the caption, tables, and other excluded elements) is 3,493 words, as established by the count of the word-processing program used to prepare it.

Dated:  March 20, 2026          /s/ Mona Houck
                                Mona Houck